UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

### CASE NO. 10-20574-CIV-JORDAN

LENNAR CORPORATION, a Delaware
Corporation, and LENNAR HOMES OF
CALIFORNIA, INC., a California Corporation,

      Plaintiffs,

vs.

BRIARWOOD CAPITAL, LLC, a Delaware
Limited Liability Company, and NICOLAS
MARSCH III, a California Individual, BARRY
MINKOW, a California Individual, FRAUD
DISCOVERY INSTITUTE, INC., a California
Corporation, and DOES 1-10, inclusive,

      Defendants.

_____/

**LENNAR PLAINTIFFS' RESPONSE TO MINKOW DEFENDANTS SURREPLY
TO LENNAR'S MOTION FOR SANCTIONS AGAINST DEFENDANTS
BARRY MINKOW AND FRAUD DISCOVERY INSTITUTE**

The Minkow Defendants' Sur-Reply mischaracterizes Lennar's motion, misstates the record, and misapplies Florida law.

## I.   COURTS FIND FACTS REGARDING DISCOVERY MISCONDUCT.

The Minkow Defendants' centerpiece argument—that this Court lacks authority to enter default because doing so would "circumvent the procedure in which the trier of fact looks at all of the evidence and makes a determination" (Sur-Reply at 2, 6, 7)—confuses a determination *on the merits* with a determination of *discovery misconduct.*

Trial courts have the authority—indeed, the responsibility—to consider discovery misconduct, take evidence, and make factual findings. *See, e.g.*, Fla. R. Civ. P. 1.380; *Babe Elias Builders, Inc. v. Pernick*, 765 So.2d 119, 120 (Fla. 3d DCA 2000). *Tramel v. Bass*, 672 So. 2d 78 (Fla. 1st DCA 1996), illustrates the point. There, the trial court granted plaintiff's motion to enter default against defendant based *"upon its finding* that [defendant] wilfully and intentionally omitted a crucial portion . . . of a videotape produced in discovery . . . to perpetrate a fraud upon to trial court." *Id.* at 79 (emph. added). The Court of Appeal affirmed because the trial court's *"interpretation of the facts"* is entitled to substantial deference. *Id.* at 83 (emph. added); *accord Ramey v. Haverty Furniture Cos.*, 993 So. 2d 1014, 1018 (Fla. 2d DCA 2008). These cases demonstrate that parties do not have an absolute right to submit underlying claims to a jury for determination. Parties forfeit that opportunity by committing the sort of litigation misconduct at issue here, which deprived Lennar of its right to a fair trial on the merits. *See, e.g. Tramel*, 672 So.2d at 79.

## II.   THE EVIDENCE OF MISCONDUCT IS OVERWHELMING.

### A.   Manufactured Documents.

The Minkow Defendants claim Lennar's "attempt to point out word matches" between known Minkow writings and the "insider" emails "reeks of desperation" and argue that courts refuse to consider "forensic stylistics" because it cannot "definitively establish that a particular person is 'the' author of a particular writing." (Sur-Reply at 7-9.) This is not the law.

Courts *routinely* permit parties to prove authorship by comparing attributes of known writings with questioned documents and through other circumstantial evidence. For example, in *U.S. v. Clifford*, 704 3d 86, 87 (3d Cir. 1983), the government sought to prove that Clifford authored a letter by comparing the letter to a known Clifford writing sample and showing "certain similarities in spelling, abbreviation, syntax, and paragraph structure." The evidence was admissible because "the similarities between the [known] correspondence and the [questioned] letters, particularly the unusual misspellings, clearly have some tendency to make Clifford's authorship more probable." Likewise, in *U.S. v. Larson*, 596 F.2d 759, 765 n.10 (8th Cir. 1979), the court permitted the government to introduce evidence that defendant's known writing and the kidnapper's ransom note both misspelled "approach" as "approuch."

In the Lindbergh baby case, the court held it was "deducible to a moral certainty beyond a reasonable doubt" that defendant Bruno Hauptmann was the kidnapper, in part, because of "the peculiarities of expression and spelling common to all these notes and admittedly genuine writings by Hauptmann." *N.J. v. Hauptmann*, 180 A. 809 (1935); *see also U.S. v. Pheaster*, 544 F.2d 353, 371 (9th Cir. 1976) (misspellings in known exemplars also appearing in questioned documents found to be relevant); *Hughes v. U.S.*, 320 F.2d 459, 461 (10th Cir. 1963) (same).

The only case cited by the Minkow Defendants underscores the point. In *United States v. Van Wyk*, 83 F.Supp.2d 515, 523 (D.N.J. 2000), the trial court stopped an expert witness from providing the ultimate "*conclusion*" that Van Wyk authored a document, but allowed the underlying evidence of similarities between known and questioned writings because "[t]here can be no question that evidence of the known writings and unknown writings is admissible; courts uniformly have admitted evidence of known writings recognizing that the particular or peculiar use of grammar and spelling . . . can be observed and identified to establish authorship." *Id.*

Here, the similarities between Minkow's known writings and the "insider" emails are undeniable. (Mot. at 26-69; Reply at 8-15.) Pointing to an unverified "google search," the Minkow Defendants say it is not "surprising" that the anonymous "Lennar insider" used the word "bombshell" in an email to analyst Josh Levin. This misses the point. The insider had no

reason to communicate with Levin, with whom Minkow had been sending emails, and described topics that only Mr. Minkow and his associates could know, such as the fact that Mr. Marsch intended to file a lawsuit accusing Lennar of conspiracy two weeks later. More importantly, *the same day* the "insider" emailed Levin, *Minkow* sent an email to Ms. Coenen on the *same topic* utilizing the *same distinct word* ("bombshell"). The Minkow Defendants have no response. Nor can the Minkow Defendants explain away the other overwhelming evidence in Lennar's papers pointing to Minkow as being responsible for the manufactured documents.

      The Minkow Defendants claim there is no way to "find signal in the noise of random letters allegedly hidden underneath an electronic redaction" in the phony "insider memo." (Sur-Reply at 8.) There is nothing "random" about the letters underneath the redaction. Every letter was in alphabetical order (a, b, c...), except two slip-ups: (1) the insertion of an "i" between the "m" and the "n" (hence, "min"); and (2) the addition of an "o" before the "w" (hence, "ow"). Both out-of-place sequences appear *in order* in the name "<u>m i n</u> k <u>o w</u>." (Reply at 11.)[1]

    **B.**   **<u>Destruction of Documents.</u>**

      The Minkow Defendants concede crucial relevant evidence has been destroyed but argue the rampant spoliation should not be "imputed" to the Minkow Defendants because it was committed by "independent parties." (Sur-Reply at 4-5.) However:

    1.    Shannon Boelter is an employee of FDI and the person charged with collecting documents on behalf of the Minkow Defendants. Ms. Boelter admitted she sent and received emails related to Lennar from her business email address, failed to suspend the "auto-delete" function of the email account and, therefore, the emails are lost forever. (Reply at 4; Ex. 60.)

    2.    Principals are responsible for document destruction perpetrated by agents, including investigators and experts. (Lennar Reply at 3-4.) Unable to refute the law, the Minkow Defendants suggest there is no evidence that either Tracy Coenen or Terry Gilbeau was

---

[1] The Minkow Defendants say that, "in order to remove any possible doubt," they are "attach[ing]" a "sworn statement that [Mr. Minkow] did not create forged documents." (Sur-Reply at 7.) The Court can consider that *unsigned* affidavit, Mr. Minkow's oral testimony at the evidentiary hearing, and all other evidence in deciding whether to grant Lennar's motion.

"an agent *at the time of the alleged spoliation of evidence.*" (Sur-Reply at 5.) The record is to the contrary. The Minkow Defendants hired Ms. Coenen and Mr. Gilbeau to investigate Lennar in December 2008 at the latest. (Ex. 31; 36; Coenen Depo. Tr. at 54:10-55:24; Gilbeau Depo. Tr. at 74:21-75:16.) Lennar served Mr. Gilbeau with a subpoena on January 16, 2009 and Ms. Coenen with a subpoena on March 2, 2009. Ms. Coenen and Mr. Gilbeau continued working on behalf of the Minkow Defendants in connection with Lennar through at least May 2009. (Ex. 25, 31, 36, 41; Coenen Depo. Tr. at 54:10-55:24; Gilbeau Depo. Tr. at 74:21-75:16.) On April 28, 2009, Mr. Minkow's attorneys submitted Ms. Coenen's legal bills to FDI's insurance carrier for reimbursement under a policy calling for the insurer to pay legal expenses of those "acting on behalf of" the insured. (Ex. 59.) Despite working for Minkow Defendants and having been served with subpoenas by Lennar, Ms. Coenen and Mr. Gilbeau methodically deleted their emails with Mr. Minkow about Lennar throughout 2009. (Ex. 36 at 28:3-29:24; Ex. 31 at 14:3-24, 97:4-12.) The Minkow Defendants do not dispute these facts.

3.      Productions from third parties conclusively show that the Minkow Defendants have failed to produce key responsive documents. (Reply at 3.) Their purported excuses for non-production have all proven to be inherently incredible. (Mot. at 18-20; Reply at 6-7.)

4.      The extreme prejudice to Lennar of the Minkow Defendants' spoliation was further underscored when, in December 2009 (after Lennar filed its motion), defendant Nicolas Marsch admitted that he, too, systematically destroyed his emails with Mr. Minkow and others concerning Lennar. (Ex. 57 at 166:3-172:14.) Because both participants in the emails deleted their records, Lennar has no ability to obtain crucial communications between defendants.

### C.      Perjury.

Mr. Minkow lied about his computer being stolen. In April 2009, he testified that he was unable to produce responsive documents because, among other reasons, his computer had been stolen in January 2009 and the stolen computer was the only source of certain information related to Lennar. (Ex. 5 at 135:19-137:8.) However, in December 2009, Mr. Minkow admitted that his computer was actually stolen in March 2008—not January 2009—and that he had been

using the "same computer" from March 2008 through November 2009. (Ex. 61 at 58:7-59:17.) The Minkow Defendants' sur-reply, which accuses Lennar of "selectively quoting" Mr. Minkow's testimony, *completely ignores* Mr. Minkow's December 2009 deposition.

###   D.   Violation of Court Order.

Abandoning an argument from their Opposition, the Minkow Defendants now admit the Court ordered them to produce "all" documents responsive to Lennar's subpoena, but argue they cannot be sanctioned because they produced *some* documents. (Sur-Reply at 3.) Florida law is to the contrary. In *Channel Components, Inc. v. Am. II Elecs.*, Inc., 915 So. 2d 1278, 1280 (Fla. 2d DCA 2005), the Court of Appeal upheld the trial court's sanction award because, notwithstanding a court order, "defendants only partially complied with the discovery requests." This makes sense. A party may not produce fluff, withhold dangerous documents, and avoid sanctions. *Qualcomm v. Broadcom*, 2008 WL 66932 at *9 (S.D. Cal. Jan. 7, 2008) (producing more than a million pages of documents was insufficient when "critically important ones" were withheld). The Minkow Defendants have withheld untold numbers of key documents, including email communications with Mr. Marsch, their agents, and their enterprise members, all outgoing phone records, most incoming phone records, and proof of payments to third-parties.

### III.   THE COURT MAY CONSIDER LENNAR'S REPLY BRIEF.

The Minkow Defendants' informal "request" to strike certain "arguments and evidence" from Lennar's Reply Brief must be denied. A party may include in a reply brief evidence that was uncovered after the submission of the moving papers. Here, for example, in December 2009, Mr. Minkow testified that his only computer was stolen in March 2008 and the theft had nothing to do with the Minkow Defendants' failure to produce documents. This testimony, which was at odds with Mr. Minkow's prior testimony, was given *after* Lennar filed its motion but *before* the deadline for its reply. Courts may consider evidence in these circumstances, especially when, as here, the non-moving party is given an opportunity to respond by way of sur-reply. *See Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006).

DATED:  February 26, 2010          Respectfully submitted,

**DUBBIN & KRAVETZ, LLP**
Samuel J. Dubbin, P.A.
1200 Anastasia Avenue
Suite 300
Coral Gables, Florida  33134
Telephone:  (305) 357-9004
Facsimile: (305) 371-4701
Email:  sdubbin@dubbinkravetz.com

and

**O'MELVENY & MYERS LLP**
Daniel Petrocelli, Esq.
David Marroso, Esq.
1999 Avenue of the Stars
7th Floor
Los Angeles, CA  90067
Telephone:  (310) 246-6850
Facsimile:  (310) 246-6779
Email: dmarroso@omm.com

By:  _Samuel J. Dubbin, P.A._
          Samuel J. Dubbin, P.A.
          Florida Bar No. 328189

Attorneys for Plaintiffs

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of February, 2010, I electronically filed the foregoing document with the Clerk of the Court's CM/ECF system, which will send notification of such filing to the indicated counsel of record, and that I have also served all of the counsel below by U.S. mail and electronic mail.

--- Alvin E. Entin, Esq., Entin & Della Fera, P.A., Auto Nation Towers, Suite 1970 110 Southeast Sixth Street, Fort Lauderdale, FL 33301 (CM/ECF);

--- Josh Entin, Esq., Rosen Switkes & Entin, P.L., 407 Lincoln Road, Penthouse SE Miami Beach, FL 33139 (CM/ECF);

--- Scott M. Dimond, Esq., Lorenz M. Prüss, Esq., Sharlene Y. Escalera, Esq., Dimond Kaplan & Rothstein, P.A., 2665 South Bayshore Dr., PH-2B, Miami, FL 33133 (CM/ECF);

--- Michelle B. Baker, Esq., b|r Law Group, LLP, North Trust Building, 4370 La Jolla Village Dr., Suite 670, San Diego, CA 92122;

--- Todd E. Macaluso, Esq., Macaluso & Associates, LLC 2100 Palomar Airport Road, Suite 214, Carlsbad, CA 92011.

By: _____ P.A.
        Samuel J. Dubbin, P.A.